UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

                                              CASE NUMBER: 12-20269
v.                                           HONORABLE VICTORIA A. ROBERTS

D-1, GLENN ENGLISH,
D-3, RICHARD HOGAN,
D-4, DONALD BERRY,

        Defendants.
_____/

## ORDER REGARDING DEFENDANTS' MOTION IN LIMINE (DOC. 91)

**I.  INTRODUCTION**

This matter is before the Court on defendant Glenn English's Motion in Limine to Prohibit the Government from Introducing Alleged Prior Acts of Misconduct.  Co-defendants Richard Hogan and Donald Berry each filed a notice of concurrence in this motion; in addition, Berry filed a Supplemental Brief in Support of Defendants' Motion in Limine.  (Doc. 94).  The Government filed a Response to Defendants' motion and Berry's supplemental brief.  Defendants did not reply to the Government's Response.

Defendants' motion requests the Court to exclude evidence of "other acts" allegedly showing they participated in health care fraud with certain businesses and individuals not referred to in the indictment.  Defendants say this evidence is inadmissible because its probative value is substantially outweighed by its prejudicial effect.  Berry also argues, individually, that the Government failed to provide exculpatory and impeachment evidence, and failed to disclose discovery in a "usable and non-confusing fashion."

Defendant Berry was severed from English and Hogan due to medical reasons; no trial date has been scheduled for Berry.

Defendants' Motion in Limine is **DENIED IN PART**. The Court **RESERVES RULING IN PART**, as follows:

(1) As to all defendants, the Court **RESERVES RULING** on the admissibility of evidence concerning Funderburg Clinical and Community Services, Inc., and Dr. Mark Greenbain, one of its operators;

(2) As to Berry, the Court **RESERVES RULING** on the admissibility of evidence concerning Gerald Brickerson, an individual named in the Government's supplemental discovery notice to Berry; and

(3) In all other respects, Defendants' Motion in Limine is **DENIED**.

## II. BACKGROUND

On May 2, 2012, the Government filed an indictment listing six defendants: Glenn English, Gregory Lawrence, Richard Hogan, Donald Berry, Felicia Marsh, and Jamie Moreau. Defendants Lawrence, Marsh, and Moreau pled guilty and entered into cooperation agreements with the Government.

In its First Superseding Indictment (the "Indictment"), the Government charges Defendants English, Hogan, and Berry (collectively "Defendants") with Conspiracy to Commit Health Care Fraud, in violation of 18 U.S.C. § 1349 (Count 1); it also charges English and Berry with Health Care Fraud, in violation of 18 U.S.C. §§ 1347 and 2 (Counts 2-8).

The charges are based on Defendants' connection to New Century Adult Day

2

Program Services, LLC ("New Century"), a Medicare provider that submitted claims directly to Medicare. The Government says English incorporated New Century in October 2009 and held it out to be an adult day care center providing psychotherapy and other mental health services. The Government's general allegations are that from October 2009 to April 2012: (a) English and Hogan obtained Medicare beneficiary numbers by recruiting people off the street who wanted prescription medication and by busing in mentally-disabled Medicare recipients from adult foster homes; (b) Defendants paid and received kickbacks in exchange for Medicare beneficiary information; (c) Berry created and signed false psychotherapy documents for Medicare beneficiaries who did not need or receive the services New Century claimed to provide; (d) Defendants fraudulently billed Medicare for health services that were not provided; and (e) Defendants received, and were unjustly enriched by, the proceeds of the fraudulent Medicare billings.

In its first discovery notice to Defendants, the Government indicated that it was "unsure" if it would offer "other acts" evidence under Fed. R. Evid. 404(b). On August 29, 2013, the Government filed supplemental discovery notices for English and Berry. In these notices, the Government says it will offer evidence under Rule 404(b) against English and Berry; the Government says the listed evidence is relevant to, and "inextricably intertwined" with, evidence of the offenses charged. The Government has not notified Hogan of an intent to offer other acts evidence against him.

In its supplemental discovery notice to English, the Government says it will offer evidence that he participated in health care fraud in connection with the following businesses and individuals: (1) Angle's Touch Home Health Care, LLC ("Angle's

3

Touch"); (2) Extended Care Phase II, Inc. ("Extended Care"); (3) First Michigan Home Health Care, Inc. ("First Michigan"); (4) Funderburg Clinical and Community Services, Inc. ("FCCS"); (5) Procare Rehabilitation, Inc. ("Procare"); (6) Quality Mental Health Service, Inc. ("Quality Mental"); (7) Quality Recreation and Rehabilitation, LLC ("QRR"); (8) ABIX, LLC; (9) Sanyani Edwards; (10) Gerald R. Funderburg, Jr.; (11) Marcus Jenkins; (12) Beth Jenkins; (13) Babubhai Patel; (14) Vinod Patel; (15) Dr. Sonjai Poonpanij; (16) Dr. Mark Greenbain; (17) Elaine Lovett; and (18) Michelle Freeman. (Doc. 88).

In Berry's notice, the Government says it will offer evidence that Berry participated in health care fraud with many of the same businesses and individuals as English; the Government names one additional individual, Gerald Brickerson, and does not list Angle's Touch, First Michigan, Sanyani Edwards, Babubhai Patel, Vinod Patel, or Dr. Poonpanij in Berry's notice. (Doc. 89).

On September 12, 2013, English filed Defendants' Motion in Limine. In their motion, Defendants say the evidence listed in the supplemental discovery notices is not inextricably intertwined with evidence of the charged offenses. Defendants also argue the evidence is inadmissible under Rule 404(b) because the Government did not indicate a proper purpose for which the "other acts" evidence is admissible, and the danger of unfair prejudice substantially outweighs the probative value of the evidence.

Berry filed a supplemental brief in support of Defendants' motion. Berry says the Government failed to provide Defendants with exculpatory evidence or Rule 404(b) evidence in a reasonable and organized manner.

In its response, the Government explains the factual background of the alleged

4

health care fraud conspiracy, explains how evidence of the individuals and businesses in the supplemental discovery notices connect to the crimes charged, and explains the purpose for which it intends to offer that evidence. The Government says the evidence is admissible because it: (1) is part of the fraud charged in the Indictment and not "other acts"; (2) constitutes inextricably intertwined, or background, evidence necessary to complete the story of the charged conduct; and/or (3) is permitted under Rule 404(b) to demonstrate Defendants' intent to defraud, plan to defraud, knowledge of what they were doing, and absence of mistake or accident. In response to Berry's supplemental brief, the Government says it has complied with all discovery obligations and is not aware of any exculpatory evidence to disclose.

### III. APPLICABLE LAW

In evaluating the admissibility of evidence, the Court must first determine whether the proposed evidence is relevant. Evidence is relevant if "it has any tendency to make a fact [of consequence] more or less probable than it would be without the evidence." Fed. R. Evid. 401. Absent a statute or rule to the contrary, all relevant evidence is admissible. Fed. R. Evid. 402. However, the Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of ... unfair prejudice..." Fed. R. Evid. 403.

#### A. "Other Acts" Evidence under Fed. R. Evid. 404(b)

Under Fed. R. Evid. 404(b), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character." However, such evidence may be used to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* In a criminal case, the prosecution must provide a

defendant with notice of the general nature of its plan to use 404(b) evidence. *Id.*

The Court has broad discretion in determining the admissibility of bad acts evidence under Rule 404(b). *United States v. Stout*, 509 F.3d 796, 799 (6th Cir. 2007). In making this determination, the Court must: (1) decide whether there is sufficient evidence that the other act in question actually occurred and defendant committed the act; (2) if sufficient evidence exists, decide whether the other act evidence is probative of a material issue other than character; and (3) if it is, decide whether the probative value of the evidence is substantially outweighed by its potential prejudicial effect. *United States v. McGee*, 510 Fed. Appx. 377, 381 (6th Cir. 2013) (citing *United States v. Jenkins*, 345 F.3d 928, 937 (6th Cir. 2003)).

### B. "Inextricably Intertwined" or "Intrinsic" Evidence

"Where the challenged evidence is 'intrinsic' to, or 'inextricably intertwined' with evidence of, the crime charged, Rule 404(b) is not applicable." *United States. v. Marrero*, 651 F.3d 453, 471 (6th Cir. 2011) (quoting *United States v. Henderson*, 626 F.3d 326, 338 (6th Cir. 2010)). The Sixth Circuit has said intrinsic acts "are those that are part of a single criminal episode. Rule 404(b) is not implicated when the other crimes or wrongs evidence is part of a continuing pattern of illegal activity." *United States v. Adams*, 722 F.3d 788, 822 (6th Cir. 2013) (quoting *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995)). In addition, 404(b) does not exclude proper "background" evidence; "[p]roper background evidence has a causal, temporal or spatial connection with the charged offense. Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or

6

completes the story of the charged offense." *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000).

## IV. ANALYSIS

### A. Evidence of the Fraud Scheme (Listed Evidence: Babubhai Patel, Vinod Patel, First Michigan, Angle's Touch, and Dr. Poonpanij)

English requests that the Court exclude evidence of his activities with Babubhai Patel, Vinod Patel, First Michigan, Angle's Touch, and Dr. Poonpanij.

The Government says the Patel brothers: (1) provided the start-up funding for New Century; (2) helped recruit Medicare beneficiaries for English and New Century; (3) helped English find a physician assistant to write prescriptions for New Century's Medicare beneficiaries; (4) provided New Century's recruited patients with prescriptions from pharmacies Babubhai Patel owned; and (5) connected New Century with First Michigan, a home health care company. The government intends to introduce a wire tap of Babubhai Patel and English discussing New Century's business. In addition, Gregory Lawrence, a co-defendant who pled guilty, will testify to the Patel's relationship with English and New Century.

In August 2011, the Patels and their co-conspirators were arrested for Medicare fraud in connection with Patels' pharmacies. After these arrests, English partnered with Angle's Touch and Dr. Poonpanij to take over for First Michigan and the physician assistant previously writing prescriptions. The government says Medicare beneficiaries at New Century, including William McIntyre and Sherry Cooper, will testify that Hogan would escort patients to Dr. Poonpanij's office at New Century to get the drugs they wanted; New Century told patients that in order to see the doctor who wrote the

7

prescription, they had to sign up for fake psychotherapy services with New Century and fake therapy services through Angle's Touch. The Government argues that the evidence of New Century and English's involvement with the Patels, First Michigan, Angle's Touch, and Dr. Poonpanij "is directly probative of the charged offense [and] completes the story of the charged offense."

The Court agrees. This evidence shows the formation of New Century and explains how English allegedly carried out the fraud at New Century. *See Hardy*, 228 F.3d at 748. This evidence is also intrinsic to the crimes charged; English's interaction with the Patels and First Michigan, and later with Angle's Touch and Dr. Poonpanij, is directly connected to the charged conduct and constitutes part of the single criminal episode alleged in the Indictment (i.e., English defrauding Medicare through New Century). *See McGee*, 510 Fed. Appx. at 381; *Barnes*, 49 F.3d at 1149.

In addition, English's state of mind is an element of Health Care Fraud and is also part of the Government's allegation that Defendants willfully conspired to defraud Medicare. *See* 18 U.S.C. §§ 1347, 1349; *United States v. Stokes*, 392 Fed. Appx. 362, 367 (6th Cir. 2010). Because intent, knowledge, plan, and absence of mistake are material issues, *see id.*, this evidence is directly probative to the underlying fraud charges. It will assist the trier of fact in determining: (1) English's intent to defraud; (2) English's knowledge of the fraud; (3) the absence of a mistake or accident; and (4) whether there was a common plan. The probative value of this evidence outweighs the danger of unfair prejudice; therefore, the Court will not exclude it.

    **B.**    **Evidence of Overlapping Billing of Beneficiaries** (Listed Evidence: FCCS, Gerald Funderburg, Sanyani Edwards, Dr. Greenbain, Procare, QRR, Marcus Jenkins, Beth Jenkins, ABIX, Elaine Lovett, and Michelle

Freeman)

The Government plans to offer evidence related to numerous businesses connected with Defendants and New Century, as well as evidence regarding the businesses' individual operators. With such evidence, the Government intends to show numerous instances where Defendants' billing at New Century overlaps with billing at the other businesses.

The Government names Procare and QRR – along with their operators, Marcus and Beth Jenkins – in its supplemental discovery notices. Beth Jenkins will testify that, beginning in 2008, she, English, and Berry entered into an agreement in which English provided Procare and QRR with 54 Medicare beneficiaries in exchange for money. Under this agreement, the Jenkins allowed Berry to establish a Provider Identification Number ("PIN") at Procare and QRR and agreed that the 54 beneficiaries would be billed using his PIN.

In addition, the Government says Medicare billing records show that Berry billed for psychotherapy services at Procare on the same date he billed for psychotherapy services at New Century. The Government says that even though Berry has a PIN at Procare and QRR, he never actually provided services at these companies. The Government also plans to introduce Berry's timesheet at QRR to show he fabricated progress notes at ABIX (which Lovett and Freeman operated).

This evidence is intrinsic to, and directly probative of, the charged offenses. Similar to the evidence related to the Patels, First Michigan and Angle's Touch, the evidence of overlapping billing is part of the same criminal episode alleged in the Indictment. Thus, this evidence is inextricably intertwined with evidence of the charged

offense and is admissible. *See McGee*, 510 Fed. Appx. at 381.

Alternatively, this evidence is admissible under Fed. R. Evid. 404(b), because it is probative of a material issue other than Defendants' character. The testimony of Beth Jenkins and Gerald Funderburg about Defendants' conduct, along with the Medicare billing records, explains how the fraud at New Century was carried out. In addition, this evidence is probative of: (1) Defendants' knowledge of the fraud; (2) Defendants' intent to commit fraud; (3) whether their was a common plan; and (4) the absence of mistake or accident. The danger of unfair prejudice does not substantially outweigh the probative value of this evidence; thus, the Court will not exclude it.

The Government also plans to introduce Medicare billing records for New Century and FCCS. With this evidence, the Government intends to show that "New Century was billing for psychotherapy services on the same date that these services were billed by FCCS." FCCS was operated by Gerald Funderburg, Sanyani Edwards, and Dr. Greenbain. The Government says Funderburg can testify that he and Edwards met with English and Berry at New Century in late 2009 to discuss the fraud occurring at New Century – specifically that New Century did not have enough licensed providers to service all of its patients.

Although the Government intends to offer the Medicare billing records of FCCS to show New Century billed certain services on the same date that FCCS billed the services, it fails to provide facts sufficient for the Court to determine whether such conduct is relevant. The Government's response fails to explain: (1) who provided the services at each business; (2) whether the services were provided to the same patient; and (3) how this conduct was fraudulent or how New Century or Defendants benefitted

from this conduct. Because the Court cannot determine if evidence concerning FCCS is relevant, there is no basis to determine if evidence concerning Dr. Greenbain is relevant. Accordingly, the Court reserves ruling on the admissibility of evidence concerning FCCS and Dr. Greenbain.

However, evidence concerning Gerald Funderburg and Sanyani Edwards is admissible. The Government says Funderburg may testify that he and Edwards met with English and Berry at New Century in late 2009 to discuss the fraud occurring at New Century. This evidence directly concerns the fraud charged; thus, it clearly is relevant. The probative value outweighs the danger of prejudicial effect; Defendants can cross-examine Funderburg concerning the truth of his testimony, and the jury can determine the weight to give his testimony. The Court will not exclude evidence concerning Funderburg and Edwards.

**C.     Evidence Regarding Creating Fake Files at New Century** (Listed Evidence: Extended Care and Quality Mental)

The Government plans to present evidence that English directed employees – including Berry, Felicia Marsh, and Gregory Lawrence – to fabricate records for New Century's claimed services. The Government intends to offer background evidence of Marsh's prior relationship with English and Berry; specifically, the Government says Marsh will testify that she and Berry first created false records for English in 2002 or 2003 at Quality Mental and Extended Care.

The Government says Marsh's testimony constitutes proper background evidence because it "completes the story" of Marsh's relationship with English and Berry and explains their role in the overall scheme at New Century. Without this background

evidence, the Government argues, her relationship to the two defendants cannot be understood.

Whether evidence of Marsh's prior relationship with Berry and English is proper background evidence is a close call. *See Hardy*, 228 F.3d at 748-50 (analyzing Sixth Circuit precedent on what constitutes proper background evidence and recognizing limitations in terms of temporal proximity, causal relationship, and spatial connections). While this evidence involves the same people as the charged conduct and it may "complete the story of the charged offense," the prior acts occurred at least six years before the charged conduct began.

Nevertheless, because the Government offers the evidence of Marsh's prior relationship with English and Berry for a proper purpose under Fed. R. Evid. 404(b), the Court does not need to resolve whether it is proper background evidence. This evidence is relevant to English and Berry's knowledge of the Medicare system, and knowledge that their conduct was fraudulent. It also demonstrates that their conduct in falsifying documents and billing Medicare for the fake services was not a mistake or accident. The probative value of this evidence is not substantially outweighed by its potential prejudicial effect; the evidence puts Marsh's relationship with English and Berry into context, and it illustrates their knowledge of the Medicare system, which directly contradicts Defendants' expected defense that they believed they were providing legitimate services; the Court will not exclude this evidence.

### D. Conditional Admission of Evidence

All evidence the Court finds to be admissible at this preliminary stage is

admissible on condition that the Government presents evidence sufficient for a juror to reasonably find – by a preponderance of evidence – the conditional fact occurred and the relevant defendant(s) committed the act. *See Adams*, 722 F.3d at 822, n.28; *Huddleston v. United States*, 485 U.S. 681, 690 (1988) (holding that a conditional fact must only be established by a preponderance of the evidence). If, at the close of the Government's case, a defendant believes the Government failed to establish a conditional fact by a preponderance of the evidence, he must move to strike the evidence. *Huddleston*, 485 U.S. at 690, n.7 ("It is, of course, not the responsibility of the judge sua sponte to insure that the foundation evidence is offered; the objector must move to strike the evidence if at the close of trial the offeror has failed to satisfy the condition.").

Additionally, any concerns Defendants have regarding the admitted evidence can be adequately resolved by proper instruction from the Court.

### E. Evidence Regarding Gerald Brickerson

In Berry's supplemental discovery notice, the Government says Berry participated in health care fraud with Gerald Brickerson. The Government fails to mention Gerald Brickerson in its Response to Defendants' Motion in Limine. As such, the Court cannot determine the nature of Brickerson's relationship with Berry. However, since Berry was severed from English and Hogan and his trial date has not been scheduled, the Court reserves ruling on the admissibility of evidence regarding Brickerson. In the meantime, the Government must supplement its brief to address Gerald Brickerson.

### F. The Government's Compliance with Discovery Obligations

In his Supplemental Brief in Support of Defendants' Motion in Limine, Berry says the Court should prevent the Government from offering "other acts" evidence because it "has not provided information relating to exculpatory evidence or 404(b) material in any organized or delineated manner."

The Government has adequately notified Berry of 404(b) evidence it plans to offer against him. Berry admits in his brief that the Government provided Defendants with 21 discs of material, allowed Berry's counsel to review documents in its possession, and has "been willing to confer and provide numerous verbal descriptions of some of the evidence and [its] theories of the instant case." In addition, counsel for the Government says: (1) it produced discovery in December 2012 and has supplemented it regularly; (2) it provided impeachment information as contemplated in *Giglio v. United States*, 405 U.S. 150 (1972); and (3) it is not aware of any exculpatory evidence to disclose.

Berry's arguments fail. The record clearly demonstrates that the Government has complied with all of its discovery obligations.

## V. CONCLUSION

Defendants' Motion in Limine is **DENIED IN PART**. The Court **RESERVES RULING IN PART**, as follows:

(1) As to all defendants, the Court **RESERVES RULING** on the admissibility of evidence concerning Funderburg Clinical and Community Services, Inc., and Dr. Mark Greenbain, one of its operators;

(2) As to Berry, the Court **RESERVES RULING** on the admissibility of evidence concerning Gerald Brickerson, an individual named in the Government's supplemental discovery notice to Berry; and

(3) In all other respects, Defendants' Motion in Limine is **DENIED**.


S/Victoria A. Roberts<br>Victoria A. Roberts<br>United States District Judge

Dated:  October 9, 2013

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on October 9, 2013.

S/Linda Vertriest
Deputy Clerk

---